**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| DAVID MYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2023-0241-BWD |
| | ) | |
| ACADEMY SECURITIES, INC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ADDRESSING PLAINTIFF'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND EXPENSES**

WHEREAS:

A.    On February 1, 2023, plaintiff David Myers ("Plaintiff") served a demand on defendant Academy Securities, Inc. ("Academy" or the "Company") pursuant to 8 *Del. C.* § 220 (the "Demand"), seeking to inspect books and records of the Company.

B.    On February 24, 2023, Plaintiff initiated this action through the filing of a Verified Complaint Pursuant to 8 *Del. C.* § 220 to Compel the Inspection of Books and Records (the "Complaint").  Dkt. 1.

C.    On July 24, 2023, the Court held a one-day trial on a paper record to resolve Plaintiff's entitlement to Academy's books and records in response to the Demand.  Dkt. 77.

D. On July 27, 2023, I issued a Post-Trial Final Report. Dkt. 78.[1] That Post-Trial Final Report, which set forth detailed factual findings and legal analyses that are incorporated by reference herein, recommended that judgment be entered for Plaintiff. *Id*. at 42. In response to Plaintiff's request for an award of costs and attorneys' fees, the Post-Trial Final Report stated that "fee shifting may be appropriate here" and granted Plaintiff leave to move for costs and attorneys' fees within thirty days of the Post-Trial Final Report becoming an order of the Court. *Id*.

E. On August 3, 2023, the Chancellor entered an Order approving the Post-Trial Final Report and adopting the findings of fact made therein. Dkt. 80.

F. On August 30, 2023, Plaintiff filed a Motion for an Award of Attorneys' Fees and Expenses (the "Motion"). Pl.'s Mot. for an Award of Attorney's Fees and Expenses [hereinafter, "Mot."], Dkt. 81.

G. On September 13, 2023, Academy filed its Opposition to Plaintiff's Motion for an Award of Fees and Expenses. Dkt. 90.

H. On September 20, 2023, Plaintiff filed his Reply in Further Support of Motion for an Award of Attorneys' Fees and Expenses. Dkt. 95.

---

[1] *See Myers v. Acad. Sec., Inc*., 2023 WL 4782948 (Del. Ch. July 27, 2023), *rep. and recommendation adopted*, 2023 WL 4996131 (Del. Ch. 2023).

NOW, THEREFORE, IT IS HEREBY ORDERED, this 2nd day of October, 2023, as follows:

1. The Motion is granted in part and denied in part.

2. "Delaware courts follow the American Rule that 'each party is generally expected to pay its own attorneys' fees regardless of the outcome of the litigation.'" *Pettry v. Gilead Scis., Inc.*, 2020 WL 6870461, at *29 (Del. Ch. Nov. 24, 2020 (quoting *Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017)). An exception exists in equity, however, when a party litigates in bad faith. *Rice v. Herrigan-Ferro*, 2004 WL 1587563, at *1 (Del. Ch. July 12, 2004). This Court has recognized that in "extraordinary circumstances," "overly aggressive litigation strategies" employed to improperly resist a books and records demand may warrant fee-shifting. *Pettry*, 2020 WL 6870461, at *30. A party seeking to shift fees must satisfy "the stringent evidentiary burden of producing 'clear evidence' of bad faith." *Dearing v. Mixmax, Inc.*, 2023 WL 2632476, at *5 (Del. Ch. Mar. 23, 2023) (ORDER) (quoting *Beck v. Atl. Coast PLC*, 868 A.2d 840, 851 (Del. Ch. 2005)). To warrant fees, a litigant's conduct must be "glaring[ly] egregious[]." *Seidman v. Blue Foundry Bancorp*, 2023 WL 4503948, at *6 (Del. Ch. July 7, 2023).

3. The following glaringly egregious conduct supports an award of attorneys' fees under the circumstances:

a. As detailed in the Post-Trial Final Report, Academy's shifting strategies in response to the Demand demonstrate that, rather than consider Plaintiff's Demand in good faith, Academy desperately searched for reason after reason to deny Plaintiff's statutory rights.[2] When Plaintiff requested information from the Company, Academy purported to cancel his shares, claiming that Plaintiff had breached his fiduciary duties as a minority stockholder and the terms of a March 2020 separation agreement with the Company.[3] When Plaintiff served the Demand, Academy rejected it on the grounds that Plaintiff's separation agreement had "released" Plaintiff's shares or, alternatively, that Academy had canceled his shares, such that Plaintiff was no longer a stockholder with standing to seek books and records.[4] After Plaintiff filed the Complaint, Academy opposed expedition, asking instead to brief a motion to dismiss premised on that separation agreement. When given the opportunity to brief that motion on an expedited basis, however, Academy elected not to do so.

b. Instead, Academy abandoned its initial arguments for rejecting the Demand—it conceded that Plaintiff, as a minority stockholder, never owed

---

[2] *See Pettry*, 2020 WL 6870461, at *30 (explaining that "[f]ee shifting may be appropriate" where the defendant "t[ook] positions for no apparent purpose other than obstructing the exercise of Plaintiffs' statutory rights").

[3] Post-Trial Final Report at 14.

[4] *Id*. at 18.

fiduciary duties to the Company, and dropped its argument that Plaintiff's separation agreement "released" Plaintiff's shares or rights under Section 220.[5] Academy then shifted its strategy by claiming that it had canceled Plaintiff's shares in October 2022 for failure to repay a "subscription receivable" encumbering his shares.[6] But the purported subscription receivable was not memorialized in writing, as required by Delaware law, and the only "evidence" purportedly supporting this argument concerned a former employee from whom Plaintiff purchased his shares, who *rejected* Academy's attempt to assert the existence of an unwritten subscription receivable without his knowledge or consent.[7] Without factual or legal support, Academy used the subscription receivable as a *post hoc* litigation tactic to justify its cancellation of Plaintiff's shares in violation of statutory procedures governing the assessment and collection of unpaid subscriptions for stock.[8] As stated in the Post-Trial Final Report, Academy should not have forced the parties to litigate this baseless standing defense through trial.[9] *See, e.g.*, *Martin v. Med-Dev Corp.*, 2015 WL 6472597, at *21 (Del. Ch. Oct. 27, 2015) (explaining that a party's "dogged

---

[5] *Id*. at 26-27.

[6] *Id*. at 27.

[7] *Id*. at 20-21.

[8] *Id*. at 26.

[9] *Id*. at 2.

5

pursuit of . . . borderline frivolous or near frivolous [issues] meets th[e] standard [for bad faith] because it utterly lacked any legal or factual bases").

        c. During the litigation, Academy also raised other baseless factual assertions and legal red herrings. For example, Academy argued that Plaintiff "offered no evidence" of "ongoing" efforts to sell his shares, despite Academy purporting to cancel them.[10] Academy also focused significant time on an irrelevant argument that Plaintiff technically violated regulatory requirements by registering with Blue Ocean, which seemed intended more to harass or embarrass than to undermine Plaintiff's entitlement to books and records.[11] Individually, these arguments would not justify fee-shifting, but in the aggregate, they reflect an unfortunate pattern of unreasonable positions designed to unnecessarily complicate the proceedings. *See Auriga Cap. Corp. v. Gatz Props.*, 40 A.3d 839, 881 (Del. Ch. 2012) (shifting fees where, "[r]ather than focus on only *bona fide* arguments, [defendant] and his counsel simply splattered the record with a series of legally and factually implausible assertions" in a strategy to "exhaust" the plaintiffs), *aff'd sub nom. Gatz Props., LLC v. Auriga Cap. Corp.*, 59 A.3d 1206 (Del. 2012); *see also Pettry*, 2021 WL 3087027, at *2 (noting that "[p]erhaps one of these positions, standing alone, could be forgiven as merely an aggressive defense," but

---

[10] Post-Trial Final Report at 29.

[11] *Id*. at 32-34.

"collectively, these positions rise to the level of glaringly egregious litigation conduct").

4. By contrast, in my view, the following arguments raised in the Motion do *not* support fee-shifting:

a. On May 5, 2023, Plaintiff moved to compel Academy to produce documents responsive to three requests for production. Dkt. 23. On May 11, 2023, Academy moved to compel Plaintiff to respond to interrogatories and produce documents in response to requests for production designed to elicit discovery into Plaintiff's actual purposes for making the Demand. Dkt. 30. At oral argument on May 16, 2023, I granted in part and denied in part both Plaintiff's and Academy's motions to compel. Dkt. 40. After that ruling, "Academy produced almost 400 more pages worth of documents (out of a total production that was slightly more than 1,000 pages)." Mot. ¶ 16; *see also id*. ¶ 34. According to Plaintiff, this shows that Academy acted in bad faith when opposing Plaintiff's motion to compel on the basis that "certain document requests were 'duplicative.'" *Id*. ¶¶ 16, 34. I disagree, as I do not view the positions taken by either party in connection with the motions to compel (both granted in part and denied in part) as unreasonable.

b. Plaintiff asserts that Academy "manufactured false and misleading evidence" by claiming, in its Pre-Trial Answering Brief, that Plaintiff's LinkedIn profile failed to mention "'his seven-year work history at Academy, an

7

ominous sign' of Plaintiff's 'animus' towards Academy." Mot. ¶ 35. As it turned out, it was Academy that asked LinkedIn to remove Academy from Plaintiff's work history. *Id.* ¶ 35. When Plaintiff's counsel alerted Academy's counsel to that fact, Academy immediately filed a corrected brief that removed this argument. *See* Dkt. 71. Given Academy's quick response to remediate the issue, this strikes me as an honest mistake rather than bad faith conduct.

c. Plaintiff also claims that Academy acted in bad faith by "falsely accus[ing] Plaintiff of sending defamatory emails two years before the Demand," suggesting the Court found "'by a preponderance of the evidence' that Plaintiff did not send the emails.'" Mot. ¶ 15 & n.28. In fact, the Post-Trial Final Report states: "Weighing the evidence, I do not believe Academy has met its burden to prove by a preponderance of the evidence that Plaintiff authored the Proton emails." Post-Trial Final Report at 34 n.89. This argument was not frivolous, and Academy's failure to satisfy its burden of proof on this fact issue does not support a finding of bad faith. *See Gen. Video Corp. v. Kertesz*, 2009 WL 106509, at *1 (Del. Ch. Jan. 13, 2009) (noting that "the simple fact that" a party's positions "were disproven at trial is not itself clear evidence of bad faith").

d. Additionally, Academy took some reasonable positions in the litigation that streamlined the proceedings, including by (1) agreeing to a trial on a paper record rather than insisting on the presentation of live testimony, and (2) taking

8

a targeted approach when addressing the scope of the Demand. Those positions weigh against wholesale fee-shifting.

5. Based on the foregoing, I recommend that the Court exercise its "broad discretion" to order a partial fee award. *Ensing v. Ensing*, 2017 WL 880884, at *12 (Del. Ch. Mar. 6, 2017) (ordering one party to pay two-thirds of another party's fees and expenses); *see also Auriga Cap. Corp.*, 40 A.3d at 881 (explaining that, where "[t]he constant presentation of arguments that were not plausible resulted in excess work by the court and, most important, by counsel for the [plaintiffs]," the defendant's "conduct both before and during th[e] litigation warrant[ed] an award of one-half of the [plaintiffs'] reasonable attorneys' fees and costs"). While approximating the burden imposed by any one litigation position is necessarily imprecise,[12] I believe roughly two-thirds of the issues could have been avoided but for Academy's insistence on taking unreasonable or implausible positions in the litigation. Accordingly, I recommend that Academy be ordered to pay two-thirds of Plaintiff's fees and costs incurred in litigating this action through trial, as well as Plaintiff's reasonable attorneys' fees and costs incurred in connection with this Motion.

---

[12] *See In re Shawe & Elting LLC*, 2016 WL 3951339, at *19 n.198 (Del. Ch. July 20, 2016) ("In cases where shifting the entirety of fees was not appropriate, this Court has used percentage approximations to determine an appropriate amount of fees to shift."), *aff'd*, 157 A.3d 142 (Del. 2017).

6.      Within five days of this Order becoming an order of the Court, the parties shall meet and confer on Plaintiff's request for fees and expenses as reflected in the unsworn declarations of T. Brad Davey, Esq. and Brendan F. Quigley, Esq. (the "Unsworn Declarations").  Dkt. 81.  If the parties cannot agree on the amount of the payment, Academy may file an opposition to the Unsworn Declarations no later than ten days after this Order becomes an order of the Court, and Plaintiff may file a reply in further support of the Unsworn Declarations no later than thirty days after this Order becomes an order of the Court.

7.      Within thirty days of this Order becoming an order of the Court, Plaintiff shall present Academy its fees and expenses incurred in connection with the Motion.  The parties shall meet and confer on the payment of Plaintiff's fees and expenses incurred in connection with the Motion no later than ten days after Plaintiff presents them to Academy.  If the parties cannot agree, Plaintiff may file a submission pursuant to Court of Chancery Rule 88 quantifying his fees and expenses incurred in connection with the Motion.

8.      This is a final report.  Exceptions may be taken pursuant to Court of Chancery Rule 144(d)(2).


*/s/ Bonnie W. David*

Bonnie W. David
Magistrate in Chancery

10